[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12126

Non-Argument Calendar

_____

JUANA ROSALINDA NOLASCO-NOLASKO,
SEBASTIAN OTTONIEL NOLASCO-NOLASCO,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-425-927

_____

Before WILSON, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Juana Nolasco-Nolasco and her minor son seek review of the Board of Immigration Appeals' ("BIA") order adopting and affirming the Immigration Judge's ("IJ") decision denying her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").[1] She raises two issues. First, she argues that substantial evidence does not support the IJ and BIA's finding that she was ineligible for asylum and withholding of removal because she showed a well-founded fear of persecution on account of her indigenous Mayan Popti race. Specifically, she argues that: (1) the systemic discrimination and economic social disparities facing indigenous Guatemalans constitute a pattern or practice of persecution, and (2) the agency should have found that her status as an indigenous Mayan was a central reason for the criminal violence she fears, as drug traffickers often target indigenous Guatemalans. Second, she argues that substantial evidence does not support the IJ and BIA's finding that she was ineligible for CAT relief, and also that the BIA failed to give reasoned

_____

[1] Nolasco-Nolasco's son is a derivative beneficiary of her asylum claim but did not file his own claims for relief from removal, so we primarily focus on Juana Nolasco-Nolasco's claims and arguments.

consideration to her CAT claim.  After careful consideration, we deny Nolasco-Nolasco's petition.

**I**

We review only the BIA's decision unless the BIA adopts the IJ's decision, in which case we review the adopted portions of the IJ's opinion in addition to the BIA's decision.  *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009).

We review factual determinations under the substantial evidence standard, "which provides that the decision can be reversed only if evidence compels a reasonable fact finder to find otherwise." *Lyashchynska v. U.S. Att'y Gen.*, 676 F.3d 962, 967 (11th Cir. 2012) (quotation marks omitted).  We must affirm "[i]f the BIA's decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.*  (quotation marks omitted). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230 (11th Cir. 2007) (quotation marks omitted).  We "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  *Id.*  (quotation marks and citation omitted).

To establish eligibility for asylum, a noncitizen must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground, or (2) a "well-founded fear" that the noncitizen will be persecuted on account of a protected ground.  *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir.

2010); 8 C.F.R. § 1208.13(a), (b).  The protected grounds include, among other things, race and membership in a "particular social group."  Immigration and Nationality Act ("INA") § 101(a)(42), 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13(a), (b).

A well-founded fear of future persecution may be established by showing: (1) past persecution, which creates a presumption of a "well-founded fear" of future persecution; (2) a reasonable possibility of being singled out for persecution on account of a protected ground that cannot be avoided by relocating within the subject country; or (3) a pattern or practice in the subject country of persecuting members of a group of which the alien is a part, such that the alien faces a reasonable possibility of being persecuted.  8 C.F.R. § 1208.13(b)(1), (2).  To establish a "pattern or practice" of persecution based on membership in a group, the applicant must show "extreme and pervasive" persecution.  *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1290–91 (11th Cir. 2020).  A government's efforts to improve the situation for a minority group weigh against a determination that the country has a pattern or practice of persecuting the group.  *See id.* at 1291 (concluding that the record did not compel a finding that there was a pattern of practice of persecuting Tamils in Sri Lanka after the end of the Sri Lankan civil war, despite evidence "that Tamils still encounter[ed] discrimination and mistreatment," and noting the government's "recognized efforts to improve the situation for Tamils and reconcile the country since the conclusion of the war, albeit slowly").

Persecution is an extreme concept that is evaluated by considering the cumulative impact of the harms suffered by the petitioner. *Kazemzadeh v. U.S. Att'y Gen.,* 577 F.3d 1341, 1353 (11th Cir. 2009) (quotation marks omitted). Economic deprivation that falls short of depriving a petitioner of any means to earn a living does not constitute persecution. *Barreto-Claro v. U.S. Att'y Gen.*, 275 F.3d 1334, 1340 (11th Cir. 2001); *see Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1292–93 (11th Cir. 2021).

An alien must prove that he suffered, or will suffer, persecution that is "on account of" a protected ground, a connection known as the "nexus" requirement. *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019). To satisfy the nexus requirement, the protected ground must have been, or will be, "at least one central reason for persecuting the applicant." INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). A reason is central if it is essential to the motivation of the persecutor, and if the protected ground is incidental, tangential, superficial, or subordinate to another reason for harm, it is not central. *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021). We have stated that "evidence that either is consistent with acts of private violence . . . or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006).

A noncitizen is eligible for withholding of removal if she shows that, upon return to her country, she more likely than not

will be persecuted there due to a protected ground, such as her race or membership in a particular social group.  INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b).  Withholding of removal contains the same nexus requirement as asylum, and the "more likely than not" standard is higher than the "well-founded fear" standard for asylum, so an applicant who fails to meet her burden of meeting the asylum eligibility test necessarily fails to show eligibility for withholding of removal.  *Sanchez-Castro*, 998 F.3d at 1286.

Here, as an initial matter, Nolasco-Nolasco does not challenge the IJ and BIA's determination that the physical violence she experienced from her father and Juan Nolasco or the emotional and financial abuse she experienced from her mother-in-law, as well as her fear of future harm at their hands, was not on account of her race or her membership in a particular social group.  When a noncitizen fails to offer an argument on an issue, or "makes only a passing reference" to it in her brief, that issue is deemed abandoned.  *Kazemzadeh,* 577 F.3d at 1341; *Sepulveda v. U.S. Att'y Gen.,* 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).  Therefore, she has abandoned any challenge to the IJ's nexus finding as to harm inflicted by these three individuals.

Substantial evidence supports the IJ and BIA's conclusion that Nolasco-Nolasco was ineligible for asylum and withholding of removal because she did not demonstrate an objectively reasonable fear of future persecution based on her race.  Nolasco-Nolasco's contention that the severe poverty experienced by indigenous people is a part of a pattern or practice of persecution by the

Guatemalan government has some support from the Country Report and the OAS Report. But the record does not compel a finding either that indigenous peoples in Guatemala face extreme social and economic discrimination rising to the level of persecution, or that the alleged discrimination faced by indigenous peoples constitutes extreme and pervasive persecution sufficient to establish a pattern or practice. *See Kazemzadeh*, 577 F.3d 1353; *Lingeswaran*, 969 F.3d at 1290-91.

Nolasco-Nolasco gave limited personal testimony as to the economic conditions faced by indigenous people, and the OAS Report states that the majority of Guatemalans are affected by poverty, violence, insecurity, and corruption. Moreover, the record indicates that indigenous people were provided equal rights by law, and the government was required to recognize their customs and traditions. And the report notes the efforts of the Guatemalan government to address poverty and violence in indigenous communities with support programs like the National Housing Fund and model police precincts, and with expansions in primary education. Thus, the record as a whole does not compel a finding that the economic disadvantages experienced by indigenous persons are severe enough to constitute the deprivation of any means of earning a living, as required to rise to the level of persecution, or that there is a pattern or practice of persecution. *See Barreto-Claro*, 275 F.3d at 1340; *Lingeswaran*, 969 F.3d at 1290–91.

Substantial evidence also supports the finding that the gang violence Nolasco-Nolasco fears would not be on account of her

race or ethnicity.  Though Nolasco-Nolasco testified that drug traffickers use Mayan children to sell drugs and Mayan adults to cultivate drugs, the record does not compel a finding that the indigenous status of such persons is a central reason they are targeted by traffickers.

## II

We review legal issues de novo, including whether the BIA afforded a petition "reasoned consideration." *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019).  To show reasoned consideration, the BIA need only draft a decision that shows it has "consider[ed] the issues raised and announc[ed] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 803 (11th Cir. 2016) (quoting *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011)).  While the agency has to consider all evidence submitted by a petitioner, it need not specifically address every piece of evidence.  *Id.*

To be eligible for CAT relief, an applicant must show that she more likely than not will be tortured if removed to the proposed country of removal.  8 C.F.R. § 1208.16(c)(2); *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004).  In this context, "torture" means:

> any act by which severe pain or suffering, whether
> physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or
> a third person information or a confession, punishing

him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1).  To acquiesce, an official must, prior to the torture, (1) actually know of the torture, or be aware of its high probability and deliberately avoid learning the truth, and (2) breach his legal responsibility to intervene.  *Id*. § 1208.18(a)(7).  An official does not acquiesce if he intervenes but is unsuccessful.  *Id*.; *Sanchez-Castro*, 998 F.3d at 1288.

Here, the record does not demonstrate that the BIA failed to give reasoned consideration to Nolasco-Nolasco's CAT claim.  The BIA specifically rejected Nolasco-Nolasco's argument about willful blindness, noted that she reported no past torture, and concluded she had failed to establish that it was more likely than not that she would be tortured in the future.  These findings are sufficient to demonstrate the BIA's reasoned consideration.  *See Jeune*, 810 F.3d at 803.

Substantial evidence supports the determination that Nolasco-Nolasco is ineligible for CAT protection because she did not demonstrate that she more likely than not would be tortured by or with the acquiescence of the Guatemalan government.  The

widespread discrimination and poverty Nolasco-Nolasco raises under her asylum claims does not constitute torture under the law. *See* 8 C.F.R. § 208.18(a)(1).  Furthermore, the record does not compel a finding that Nolasco-Nolasco will more likely than not suffer mistreatment "inflicted by or at the instigation of or with the consent or acquiescence of" a government official.   8 C.F.R. § 208.18(a)(1).  The record indicates that the Guatemalan government has made efforts to combat poverty, discrimination, and violence.  The limited success, or lack thereof, of these efforts do not support a finding of governmental acquiescence to torture.  *See Sanchez-Castro*, 998 F.3d at 1288.

★  ★  ★

Substantial evidence supports the BIA's finding that Nolasco-Nolasco was ineligible for asylum and withholding of removal.  The BIA gave reasoned consideration to Nolasco-Nolasco's CAT claim and substantial evidence supports the determination that Nolasco-Nolasco did not demonstrate that she more likely than not would be tortured by or with the acquiescence of the Guatemalan government.  Therefore, we deny Nolasco-Nolasco's petition.

**PETITION DENIED.**